## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TROY SMITH**

  **Petitioner,**

**v.**           **Case No. 8:18-cv-2597-CEH-AAS**

**SECRETARY, Department of Corrections,**

  **Respondent.**

_____/

## O R D E R

This cause comes before the Court on Troy Smith's petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1) Smith challenges his state convictions for capital sexual battery and lewd or lascivious molestation. The Respondent concedes the petition's timeliness. Upon consideration of the petition (Doc. 1), the response (Doc. 7), and the reply (Doc. 11), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the petition will be **DENIED**.

## Facts[1]

---

[1] This factual summary derives from Smith's brief on direct appeal and the record. (Respondent's Exhibits 4 and 7)

The minor victim lived with her mother, her siblings, and Smith.  On multiple occasions when the victim was between seven and nine years old, Smith touched the victim with his hands, penis, and mouth and both orally and anally penetrated the victim with his penis.  Smith told the victim to not tell her mother about the abuse. The victim kept a journal that was discovered by a teacher at school in which the victim alleged that her "dad raped her."  The teacher called the police who went to the victim's home to speak to her about the allegations.  The victim did not disclose to the police what Smith had done to her because she did not want her mother to know.  The victim subsequently wrote a note to her mother and told her what happened.  When the mother confronted Smith with the note, Smith admitted to sexually abusing the victim.

Detective Scott Gore investigated the victim's allegations.  Smith went to the police station and admitted in a recorded interview that he inappropriately touched the victim and that there was "anal penetration" and "some oral activity."  Smith also wrote a note at the police station in which he admitted to anal penetration and oral sex with the victim.   Smith was arrested and charged in a second amended Information with capital sexual battery and lewd or lascivious molestation.  A jury convicted Smith of both crimes and he was sentenced to concurrent terms of life imprisonment.   The state appellate court affirmed both Smith's convictions and

sentences and the denial of his state Rule 3.850 motion for post-conviction relief. (Respondent's Exhibits 9 and 13)

## **Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may

issue only if one of the following two conditions is satisfied - - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Cone*, 535 U.S. at 693.  A federal court must afford due deference to a state court's decision.  "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court on direct appeal affirmed Smith's convictions and sentences.  (Respondent's Exhibit 9)  In another *per curiam* decision the state appellate court affirmed the denial of Smith's Rule 3.850 motion.[2]  The state appellate court's affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d

---

[2] The record includes a copy of the mandate issued in Smith's appeal of the denial of his Rule 3.850 motion, but no copy of the order affirming the denial. (Respondent's Exhibit 13) The Court takes judicial notice of the state appellate court's docket in case number 2D18–0206 which shows that the *per curiam* decision affirming the denial of Smith's Rule 3.850 motion was docketed on August 3, 2018. *See* online docket for the Florida Second District Court of Appeal at: http://onlinedocketsdca.flcourts.org

1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert.*

*denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 562 U.S.

at 99 ("When a federal claim has been presented to a state court and the state court

has denied relief, it may be presumed that the state court adjudicated the claim on

the merits in the absence of any indication or state-law procedural principles to the

contrary.").

Review of the state court decision is limited to the record that was before the

state court.

> We hold that review under § 2254(d)(1) is limited to the record
> that was before the state court that adjudicated the claim on the
> merits. Section 2254(d)(1) refers, in the past tense, to a state-
> court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of,
> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record
> in existence at that same time, i.e., the record before the state
> court.

*Pinholster*, 563 U.S. at 181–82.  Smith bears the burden of overcoming by clear and

convincing evidence a state court factual determination.  "[A] determination of a

factual issue made by a State court shall be presumed to be correct.  The applicant

shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness

applies to a finding of fact but not to a mixed determination of law and fact.  *Parker*

*v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## **Standard for Ineffective Assistance of Counsel**

Smith claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Smith must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Smith must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on

investigation." 466 U.S. at 690–91. Smith cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Under 28 U.S.C. § 2254(d) Smith must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (a

petitioner must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA"), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"), *cert. denied*, 134 S. Ct. 191 (2013).

**Ground One**

Smith contends that his trial counsel rendered ineffective assistance by not investigating and presenting "evidence that would have strengthened the defense and impeached two State witnesses." (Doc. 1 at 13) Smith alleges that when the victim's mother, Carolyn Smith ("Carolyn"), was asked at trial if anyone had shared with her specific details about what Smith said to the police, she responded, "No . . . . [b]ut at the same time . . admits to being on the phone with the defendant for more than two hours after he spoke to the police." (*Id.*) According to Smith, he asked his trial counsel "multiple times" to retrieve text messages that he sent to Carolyn to prove that he had told her everything he had said to the police and that she and the victim changed their story to match the story that Smith gave to the

police.  Smith claims that the victim told Detective Scott Gore that she was abused when she was ten to twelve years old but he told the police that the victim was eight to nine years old when the abuse occurred.  Smith alleges that the day after he gave his statement to the police the victim changed her story to allege that the abuse occurred when she was eight to nine years old.  He argues that "[t]he only way the victim could have known what the defendant had told police is to have [Carolyn] tell her what to say." (*Id*. at 14)  Smith claims Carolyn coerced him into talking to the police and that the text messages "would have backed up the defendant's story that he gave a confession to take the heat off his family at the urging of his wife." (*Id*. at 15)  Smith further claims that this evidence about his alleged false confession could have been used to impeach both the victim and Carolyn and that trial counsel's alleged failure to investigate this evidence was unreasonable.  Smith alleges that his trial counsel failed to narrow down the timeframe in which the abuse occurred and that "[a] simple statement of particulars could have led to the defendant not being charged at all." (*Id*. at 18)

The state post-conviction court rejected this ground in Smith's Rule 3.850 motion as follows (Respondent's Exhibit 12, Order Denying Defendant's Motion for Postconviction Relief at 4–5) (court's record citations omitted):

> Defendant alleges that counsel was ineffective for failing to investigate telephone records between Defendant and [REDACTED].  Defendant essentially claims that [REDACTED] pressured him into giving a false confession to

11

law enforcement and appears to allege that she fed him details to tell the investigating detective. Defendant contends that these records would have impeached [REDACTED]'s credibility and supported Defendant's trial testimony that his confession was false.

When alleging that counsel was ineffective for failing to impeach a witness, the defendant must allege which portions of the witness's testimony counsel could have impeached and how the failure to do so impacted the trial. *Mohr v. State*, 17 So. 3d 1249, 1249 (Fla. 2d DCA 2009). Any party may attack the credibility of a witness by introducing a witness's prior statement that is inconsistent with the witness's trial testimony. *See* § 90.608(1), Fla. Stat. [REDACTED] testified that she and Defendant texted and spoke throughout the day that he was questioned by Detective Gore. Detective Gore also testified that [REDACTED] and Defendant were in contact with one another and Defendant was observed texting and talking on the phone after his interview. Because [REDACTED] admitted to communicating with Defendant throughout the day, defense counsel could not have used phone call records to impeach her on the issue of whether they exchanged phone calls. *See Calhoun v. State*, 502 So. 2d 1364, 1365 (Fla. 2d DCA 1987) (explaining that a witness cannot be impeached if he or she does not make a statement that is actually inconsistent with a prior statement). Additionally, even if admissible, phone call records could not have established the content of the conversations. As for any substantive text messages that may have been retrieved, Defendant does not specify what statements [REDACTED] conveyed in those messages that could have been used to impeach her. He only states, in vague and conclusory fashion, that [REDACTED] was well aware of everything going on and being said by the Defendant.

However, even if defense counsel failed to adequately investigate the content of the text messages, Defendant cannot establish the prejudice alleged. Defendant contends that this evidence would have proven that [REDACTED] coerced him to talk to the police. However, this directly contradicts Defendant's unequivocal, sworn trial testimony that he spoke to Detective Gore voluntarily, that no one told him what to say to Detective Gore, and that he made up the

12

details of his false confession because he wanted the police to leave his family alone. Additionally, there was testimony that [REDACTED] knew at least some of the details of the victim's allegations before Defendant was questioned because the victim wrote her a note about the abuse, which [REDACTED] showed to Defendant. Thus, the jury did hear evidence that [REDACTED] may have been privy to some details of the offense and, nevertheless, found Defendant guilty. Considering these facts and circumstances, the Court finds that Defendant fails to establish a reasonable probability that counsel's failure to investigate and impeach [REDACTED] with phone and text message records undermines the court's confidence in the outcome of the proceeding. This claim is therefore denied.

Smith provides no evidence to support his allegations that the text messages would have either "strengthened the defense and impeached two State witnesses" or "would have proved Ms. Smith was feeding the victim details to tell the police." (Doc. 1 at 13; Doc. 11 at 5)  A ground for relief based on speculation is insufficient to support a claim of ineffective assistance of counsel. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.").  Moreover, as the state post-conviction court noted, Smith's trial testimony belies his contention that Carolyn coerced him into talking to the police. Smith testified at trial that he voluntarily arranged to meet with Detective Gore, that he admitted to abusing the victim because he "just wanted them to leave his family alone," that all of his statements to Detective Gore were lies, and that he "just made up" facts. (Respondent's Exhibit 4, trial transcript at 484–505)  Smith does not

demonstrate that the result of the trial would have been different if his trial counsel had obtained the records and attempted to impeach either Carolyn or the victim. Consequently, Smith fails to establish that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Two**

Smith contends that (1) his rights under the Fifth, Sixth, and Fourteenth Amendments were violated when the State "knowingly" commented on his right to remain silent during *voir dire* and (2) his trial counsel rendered ineffective assistance by not requesting a curative instruction or moving for a mistrial based on the prosecutor's allegedly improper comments.

The record shows that during questioning by the court during *voir dire* prospective juror Thomas responded to the court's inquiry as follows (Respondent's Exhibit 4, trial transcript at 54–55):

> THE COURT: Okay. Folks, other than what we talked about here, are all of you telling me that you could be fair and impartial—other than what we talked about, anybody have any other reason why you couldn't be fair and impartial other than what we talked about? Yes, ma'am. Who is that?
>
> PROPSECTIVE JUROR THOMAS: Thomas. In a case like this would the victim be present? Because I feel like I would be—
>
> . . . .

14

THE COURT: Stand up, ma'am, please. You're saying what now?

PROSPECTIVE JUROR THOMAS: I just had a question. Like, in a case like this, would the victim be present? Because I feel like I would need to hear both parts of the story from each person. That's my question.

THE COURT: You want to hear both sides of the story?

PROSEPCTIVE JUROR THOMAS: Yeah, not just on paper. Each individual.

THE COURT: Okay. Thank you, ma'am. . . .

Later during *voir dire* the prosecutor inquired of the venire as follows

(Respondent's Exhibit 4, trial transcript at 92–93):

[PROSECUTOR]: All right. You all agree, obviously, the Defense has no burden to prove anything in this case. Do you all agree with that?

PROSPECTIVE JURY PANEL: Yes.

[PROSECUTOR]: They can sit here and read the newspaper, read the comics, do the crossword puzzle. I know they are not going to do that but you agree they have to prove nothing in this case. You all agree to that; is that correct?

I know, Ms. Thomas, you asked as far as wanting to hear both sides of the case. Obviously, the State has to present witnesses and testimony to prove the elements beyond a reasonable doubt. Now, obviously, the Defendant has a right to remain silent. He does not have to testify if he does not choose so. Is that going to cause a problem for you if he chooses to exercise his constitutional right to remain silent?

Trial counsel objected to the prosecutor's question and argued (*Id*. at 93–94):

[COUNSEL]: Judge, I'm going to object to this line of questioning.

15

THE COURT: Approach the bench.

(WHEREUPON A SIDEBAR CONFERENCE WAS HAD OUTSIDE THE HEARING OF THE JURY AS FOLLOWS):

[COUNSEL]: We object to the State getting this line of questioning. The State can't ask the jurors about the defendant's right to remain silent. It's the defendant's right and province to ask potential jurors, if they so choose, that the defendant has the right to remain silent.

THE COURT: State?

[PROSECUTOR]: Your Honor, I think I have every right to go into it. Obviously, part of the law is to make sure they follow the law that he has the right to remain silent whether he chooses to testify or not. She, obviously, said she has to hear both sides of the story. So I need to make sure that she follows the right that the defendant has.

[COUNSEL]: There is case law directly on point. I've never come across the State trying to ask the question. I can certainly try to pull up real quickly, Judge, if you prefer.

[PROSECUTOR]: The case law actually says—

THE COURT: I know what the case law says. I've never seen a juror come up saying I need to hear both sides as if she anticipated the issue. I'm going to sustain the objection. Don't go into—for whatever it's worth, don't go into it. I assume somebody is going to have to go into it.

Smith argues that "[t]he prosecutor's remarks here were to demean the defendant's role at trial" and that "[t]his happening during *voir dire* had an impact on the entire trial and had a coercive effect on the defendant's choice to testify." (Doc. 1 at 21)  Smith asserts in his reply that, despite the court's instructions, "the jurors had already expressed a desire to hear both sides of the story and the comments

16

further prompted the jury to consider the Petitioner's silence in evaluating the case."

(Doc. 11 at 7)

The state post-conviction court rejected this ground in Smith's Rule 3.850

motion as follows (Respondent's Exhibit 12, Order Denying Defendant's Motion for

Postconviction Relief at 4–5) (court's record citations omitted):

> Defendant alleges that counsel was ineffective for failing to move for a mistrial or request a curative instruction after the State improperly commented on Defendant's right to remain silent during voir dire. Defendant asserts that he was prejudiced because the comment called undue attention to his right to remain silent and coerced Defendant into testifying.

> It is axiomatic that it is improper for the State to comment on a criminal defendant's constitutional right to remain silent. *See* Fla. R. Crim. P. 3.250; *Marston v. State*, 136 So. 3d 563, 570 (Fla. 2014); *Rodriguez v. State*, 753 So. 2d 29, 39 (Fla. 2000) ("[W]e strongly caution prosecutors against making comments that may be interpreted as comments on the defendant's failure to testify or that impermissibly suggest a burden on the defendant to prove his or her innocence."). In voir dire, "it is a defendant's prerogative—not the prosecutor's—to first broach with potential jurors the sensitive area of not taking the witness stand." *Varona v. State*, 674 So. 2d 823, 825 (Fla. 4th DCA 1996). Improper comments are subject to a harmless error analysis, but are considered "high risk errors because there is a substantial likelihood that meaningful comments will vitiate the right to a fair trial." *State v. DiGuilio*, 491 So. 2d 1129, 1136 (Fla. 1986).

> The record reflects that, during voir dire, the State questioned a prospective juror about her comment regarding wanting to hear "both sides" of the case. The State asked the juror if it would cause a problem for her if the defendant chose to remain silent. Defense counsel objected and the court sustained the objection after a discussion at the bench. The circumstances surrounding the prosecutor's comment in the instant case are similar to the comments addressed in

*Rosa v. State*, 696 So. 2d 1299, 1301 (Fla. 3d DCA 1997), and *Grieve v. State*, 731 So. 2d 84 (Fla. 4th DCA 1999). In *Rosa*, a juror indicated that she wanted to hear "both sides of the story." 696 So. 2d at 1300. In response, the prosecutor stated: "The Judge is going to instruct you that it's the Defendant's Constitutional right that he doesn't have to say anything." *Id*. The trial court overruled defense counsel's objection to the comment. *Id*. Defense counsel later questioned the jurors about the defendant's right to remain silent. *Id*. In *Grieve*, the prosecutor also referenced the trial judge's instruction on the defendant's right to remain silent, in direct response to a juror's statement that he would "probably have to hear from the defense" about what occurred. 731 So. 2d at 84. The *Grieve* and *Rosa* Courts both held that the comments did not vitiate the fairness of the trials and were distinguishable from cases where a prosecutor, without prompting, comments on a defendant's silence. *Id*.; *Rosa*, 696 So. 2d at 1301.

In this case, the prosecutor's comment, though not framed as a reference to the standard jury instruction, was in direct response to a juror's statement and did not misstate the law. Defendant ultimately testified and the State introduced post-Miranda admissions. Under these circumstances, the Court finds that any error was harmless and Defendant fails to establish either that counsel was ineffective for failing to move for a mistrial or curative instruction, or that Defendant was prejudiced thereby.

The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609 (1965). "*Griffin* prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976). An improper prosecutorial remark compels habeas corpus relief only if the remark is so egregious that the proceeding is rendered fundamentally unfair. *See United States*

*v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial."). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). *Darden*, 477 U.S. at 181, teaches:

> The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, [643] . . . (1974). Moreover, the appropriate standard of review in a petition for the writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642 . . . .

*Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (*en banc*) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), *cert. denied*, 480 U.S. 911 (1987).

The record shows that later in *voir dire* during trial counsel's questioning of the venire the trial judge clarified the law on Smith's right to remain silent (Respondent's Exhibit 4, trial transcript at 149–51):

19

[COUNSEL]: . . . . [The prosecutor] talked about it that Mr. Smith has the right to remain silent. Everybody probably heard it. Has anybody not heard that, the defendant has the right to remain silent? Ms. Ayoub? . . . .

Okay. Have you ever heard the phrase the defendant has the right to remain silent?

PROSPECTIVE JUROR AYOUB: Yes.

[COUNSEL]: Okay. And that sort of goes along with the burden of proof, right? They have to prove him guilty whether or not Mr. Smith testifies at all, right? Would that bother you if Mr. Smith didn't testify today?

. . . .

PROSPECTIVE JUROR AYOUB: You can't prove a negative.

[COUNSEL]: Okay. So you can't prove a negative. I understand what you're saying. Does anybody disagree? Yes, ma'am, Ms. Thomas? Tell me what you think.

PROSPECTIVE JUROR THOMAS: I disagree. I feel like when people speak about something, it brings out their demeanor and actions. And I feel like I would not be able to correctly decide whether they were innocent or guilty unless I heard their voice, how they were acting, their facial expressions. I can read people. To me, by them not speaking, it makes them seem more guilty because they don't want to give up their expressions or how they react about the situation. To me, it's just more towards guilty. If the girl didn't want to speak, it means she was trying to hide something.

. . . .

THE COURT: Let me interrupt before we get to far down this road. Folks, the law of our country, the fundamental law of our country is—and I'll read [to] you from part of the standard jury instruction. In every criminal proceeding the defendant has the absolute right to remain silent. At no time is it the duty of the defendant to prove his innocence.

20

> From the exercise of a defendant's right to remain silent, a jury is not permitted to draw any inference of guilt. And the fact that a defendant did not take the witness stand must not influence your verdict in any manner whatsoever.
>
> Now, folks, the question becomes can you follow the law or are you so caught up in your own ideas that you disregard the law. The fact is that a defendant has the absolute right to remain silent. The fact that somebody may want to hear from him, quite frankly, is beside the point. The question is whether you can follow the law or not or whether you can't. [3]

In this case, the prosecutor's comments, even if improper, neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting convictions amount to a denial of due process. *See Tucker*, 802 F.2d at 1296. The record shows that counsel objected when the prosecutor began this line of questioning and that the trial court clarified the law for the venire. Smith fails to show that the result of the trial would have been different if counsel had either requested a curative instruction or moved for a mistrial. *See Portuondo v. Agard*, 529 U.S. 61, 67 (2000) (noting that when a jury has been instructed that the defendant's silence at trial cannot be taken as an implication of his guilt, "it is reasonable enough to expect a jury to comply with that instruction, since . . . the inference of guilt from silence is not always 'natural or irresistible'"). Consequently, Smith cannot meet his burden of proving that the state court either unreasonably

---

[3] During jury selection prospective juror Thomas was stricken for cause and did not serve on the jury. (Respondent's Exhibit 4, trial transcript at 178–79)

applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Three**

Smith alleges that his Sixth and Fourteenth Amendment rights were violated "when the State willfully suppressed impeaching evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) . . . ."  (Doc. 1 at 23)  Smith asserts that during the trial when the prosecutor disclosed to the court that "we've read the rest of [the victim's] journal and the whole journal isn't in evidence," counsel objected "and then reversed his course knowing that he just heard the State say they read the whole journal . . . ."  (Doc. 1 at 25–26)  Smith contends that his trial counsel rendered ineffective assistance by withdrawing the objection and that "[h]ad counsel carried through with his objection we could have possibly seen the entire journal and had it available to use at trial."  (*Id*. at 26)  Smith argues that "the State's *Brady* violation hampered the defense" and "[t]rial counsel's ineffective objection and unreasonable reversal of that objection prevented the defendant from very important and material information that would have led to a different trial outcome."  (Doc. 1 at 28)

The state post-conviction court rejected this ground in Smith's Rule 3.850 motion as follows (Respondent's Exhibit 12, Order Denying Defendant's Motion for Postconviction Relief at 7–8) (court's record citation omitted):

> First, Defendant alleges that the State committed a *Brady* [FN2] violation by withholding the contents of the victim's

journal. Defendant claims that the State only disclosed a portion of the journal and argues that the additional journal entries would have contained impeachment evidence. Defendant claims the State's failure to disclose this information prejudiced the outcome of his trial because the journal would have supported his version of events and supported his theory that the victim's journal entries actually referred to one [REDACTED] as the perpetrator. Defendant also appears to claim that trial counsel was ineffective for failing to raise a discovery violation.

   2. *Brady v. Maryland*, 373 U.S. 83 (1963).

To establish a *Brady* violation, the movant must show that (1) the evidence was favorable to the defendant, either because it is exculpatory or impeaching, (2) the evidence was willfully or inadvertently suppressed by the State, and (3) there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *Wickham v. State*, 124 So. 3d 841, 851 (Fla. 2013). Defendant's claim is refuted by the record. Detective Gore testified at his deposition that he retrieved the victim's journal from [REDACTED] and submitted it as evidence. It is thus apparent from the record that counsel knew that the journal was being held as evidence and could have reviewed it. Defendant cannot establish that the State suppressed evidence that counsel was, in fact, put on notice of. Additionally, Defendant's claim that the other portions of the journal would have supported his defense is entirely speculative. All of Defendant's specific arguments about the journal pertain to things the victim wrote on the pages that were entered into evidence. He claims that the victim's entries on those pages conflict with her trial testimony, but does not explain how any other pages in the journal are relevant or would have established a defense. This aspect of Defendant's claim is denied.

Defendant's ineffective assistance of counsel claim for failing to raise a discovery violation also is without merit. If a defendant discovers before the conclusion of a trial that the State failed to disclose exculpatory information to the defense, the trial court must conduct a *Richardson* [FN3] hearing to determine (1) whether a violation occurred, (2)

whether the violation was inadvertent or willful, trivial or substantial, and (3) whether the defendant's trial strategy would have been materially different had the violation not occurred. *See Sinclair v. State*, 657 So. 2d 1138, 1140 (Fla. 1995); *Taylor v. State*, 62 So. 3d 1101, 1112 (Fla. 2011). Information that counsel is aware of cannot constitute a discovery violation. It is clear from the record that counsel knew about the journal and either chose not to investigate it, or reviewed it and determined that the other portions of the journal were not relevant or helpful to Defendant. In either event, counsel was not ineffective for failing to make a baseless request for a *Richardson* hearing. This claim is denied.

3. *Richardson v. State*, 246 So. 2d 771, 775 (Fla. 1971).

*Brady v. Maryland*, 737 U.S. 83, 87 (1963), holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, a petitioner must show that (1) the evidence is favorable to the accused, either because it is exculpatory or it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the evidence is material. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Suppressed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

24

The record supports the state post-conviction court's rejection of this ground. In his April 2010 deposition—taken nearly two years before the January 2012 trial—Detective Scott Gore testified that once he learned that the school resource officer had the victim's journal, he went to the school, retrieved the journal, and entered it into evidence.  (Respondent's Exhibit 1)  Thus, even assuming *arguendo* that the additional pages of the journal included evidence that was either exculpatory or impeaching, Smith cannot show that the State either willfully or inadvertently suppressed this evidence. *See Banks*, 540 U.S. at 691.  Smith is not entitled to relief on his *Brady* claim.

Smith likewise fails to substantiate his ineffective assistance of counsel claim. The State introduced into evidence at trial a two-page excerpt of the victim's journal. (Respondent's Exhibit 4, trial transcript at 332–33)  During trial counsel's closing argument the State objected to counsel's reference to the victim's journal as follows (Respondent's Exhibit 4, trial transcript at 551–53):

> [COUNSEL]: No one read the rest of the journal. That doesn't make any sense. This is it, State's Exhibit 1. You guys get to read this. You guys get to bring it into the jury room. You get to read everything that any of us has ever read. Detective Gore different [*sic*] read any other part of this journal. [The prosecutor] has never read any other part of this journal.
>
> [PROSECUTOR]: Objection, Your Honor. May we approach?
>
> THE COURT: Yes.
>
> (WHEREUPON A SIDEBAR CONFERENCE WAS HAD OUTSIDE THE HEARING OF THE JURY AS FOLLOWS):

[PROSECUTOR]: Obviously, I'm not a State witness. And we've read the rest of the journal and the whole entire journal isn't in evidence. So I think it's incredibly and completely inappropriate argument. Not only is he misstating the facts—because Gore indicated that he did look at the journal and this was the only entry, obviously, that was relevant to the case.

[COUNSEL]: Okay. Well, if there is a whole other journal, I've never seen it and that's a discovery violation. I'm not complaining about it. Detective Gore said nobody read any other part of the journal. This is all that's been given to me. This is all that—yeah, no one has ever read any other parts of the journal. I think the teacher pulled it out and gave it to the police.

THE COURT: To the extent that you said that [the prosecutor] here hasn't read it, that is beyond the evidence.

[COUNSEL]: I agree.

THE COURT: There is no evidence as to what—she's not a witness. There's no evidence about what she's read or hasn't read. So that argument is inappropriate because you're arguing outside of the evidence. The objection is sustained as to that point. Proceed.

Smith argues that if "counsel had carried through with his objection[,] we could have possibly seen the entire journal and had it available to use at trial." (Doc. 1 at 26)  Smith's allegation is speculative.  Moreover, Smith does not show that he had a viable discovery violation that his trial counsel failed to pursue.  Even assuming that counsel performed deficiently by not asserting a discovery violation, Smith cannot show prejudice as *Strickland* requires.  Smith presents no evidence establishing the contents of the remaining pages of the journal and, consequently, cannot show that the outcome of his trial would have been different if counsel had

further pursued the objection as he suggests counsel should have done.  Smith fails

to establish that the state court either unreasonably applied *Strickland* or

unreasonably determined the facts by rejecting this claim of ineffective assistance of

counsel.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).  Accordingly, Ground Three warrants

no relief.

**Ground Four**

Smith contends that his trial counsel rendered ineffective assistance by not

requesting a statement of particulars from the State.  Smith argues that "[t]he State

had information that should have been used to narrow the timeframe"[4] in which the

crimes occurred and that inconsistencies in both the victim's statements and her

mother's statements about when the abuse occurred could have been used to impeach

their trial testimony.   Smith asserts that during different interviews with the

prosecutor and the police the victim gave different ages and different dates about

when the abuse occurred and that "counsel never discovered any of this information

that was in the State's possession."  (Doc. 11 at 12)  Smith alleges that "[t]here is no

reasonable trial strategy counsel could have had in allowing such a broad timeframe"

to be charged in the second amended Information and that a statement of particulars

---

[4] The second amended Information alleged that the crimes occurred between October 13, 2004, and February 1, 2008. (Respondent's Exhibit 3)

"could have led to a completely different trial strategy or a dismissal of the charges all together." (Doc. 1 at 34)

The state post-conviction court rejected this ground in Smith's Rule 3.850 motion as follows (Respondent's Exhibit 12, Order Denying Defendant's Motion for Postconviction Relief at 9–10) (court's record citations omitted):

> Defendant alleges that counsel was ineffective for failing to request a statement of particulars pursuant to Florida Rule of Criminal Procedure 3.140. Specifically, Defendant contends that the information was vague regarding the dates of the alleged offenses, which limited his ability to prepare a defense. Defendant argues that he would have been found not guilty if he had been able to tailor a defense to more specific dates.

> Rule 3.140(d)(3) requires that each count of an indictment or information contain "allegations stating as definitely as possible the time and place of the commission of the offense charged in the act or transaction . . . [.]" Subsection (n) allows the defendant to move for a statement of particulars when the information fails to inform the defendant of the particulars of the offense sufficiently to enable the defendant to prepare a defense. Where an information alleges a lengthy period of time and the State can demonstrate that it has exhausted all reasonable means of narrowing the time frame, the burden shifts to the defendant to demonstrate that the defense will be prejudiced. *See Dell'Orfano v. State*, 616 So. 2d 33, 35 (Fla. 1993). Due to the nature of cases that allege ongoing sexual abuse of a child, prosecutors are given latitude in alleging the date ranges for such offenses. *See id.* When a victim is unable to specify dates in a case of ongoing abuse, it is permissible to allege that the charged offenses occurred on one or more occasions within a specified date range. *See State v. Generazio*, 691 So. 2d 609, 611 (Fla. 4th DCA 1997); *Whittingham v. State*, 974 So. 2d 616, 618–19 (Fla. 4th DCA 2008).

> Count One of the State's Second Amended Felony Information alleged capital sexual battery, on one or more occasions, between October 1, 2005, and January 31, 2008.

28

Count Two alleged lewd or lascivious molestation, on one or more occasions, for the same date range as count one. Defendant claims his defense was prejudiced because the date range was insufficiently narrow. However, it is apparent from the pretrial record that the victim alleged multiple instances of sexual contact when she was a young child; years before the abuse was reported to law enforcement. Defendant's own inculpatory statements to police corroborate part of the alleged time frame.

The facts and circumstances of the case therefore supported an information that alleged a date range of abuse. *See Whittingham*, 974 So. 2d at 618–19. Furthermore, defense counsel deposed the victim about the timeline of the alleged offenses and therefore was on notice of the time frame of the allegations that the State would question her about at trial. Defendant alleges that he may have been able to establish an alibi or some other defense, but the court finds this allegation speculative and conclusory. *See Easterly v. State*, 22 So. 3d 807 (Fla. 1st DCA 2009) (finding that the defendant could not establish prejudice for State's failure to furnish statement of particulars for ongoing sexual abuse where the defendant knew which events the State would question the victim about and did not argue that he had an alibi defense or other defense for which a narrowed timeframe would be advantageous). In sum, Defendant fails to establish that counsel was ineffective for failing to move for a statement of particulars or that he was prejudiced by counsel's failure to do so. This claim therefore is denied.

"The purpose of a bill of particulars is merely to give the defendant notice of the particular acts relied upon by the state to establish the crime charged, that the defendant may be fully advised of the nature and cause of the accusation against him, and that he may have an opportunity to prepare his defense." *Middleton v. State*, 74 Fla. 234 (1917). Florida Rule of Criminal Procedure 3.140(d)(3) requires that "[e]ach count of an indictment or information on which the defendant is to be

tried shall contain allegations stating as definitely as possible the time and place of the commission of the offense charged in the act or transaction or on 2 or more acts or transactions connected together . . . ."   Counsel may move for a statement of particulars if "the indictment or information on which the defendant is to be tried fails to inform the defendant of the particulars of the offense sufficiently to enable the defendant to prepare a defense."  Fla. R. Crim. P. 3.140(n).

Smith speculatively asserts that counsel "never discovered any of this information that was in the State's possession" about the victim's differing statements on the dates and ages.  However, Smith presents no evidence showing that counsel was unaware of this information.[5]  The second amended Information, filed in January 2011—more than one year before the trial—charged Smith with crimes alleged to have occurred between October 13, 2004, and February 1, 2008.  (Respondent's Exhibit 3)  Smith does not show that the second amended Information failed to place him on notice to "enable [him] to prepare a defense."[6]  Fla. R. Crim. P. 3.140(n).  Accordingly, he does not establish how a statement of particulars was

---

[5] As the state post-conviction court noted, trial counsel deposed the victim in 2010, nearly two years before the trial. In her deposition the victim averred that the abuse happened "nine to ten times in between one to two months."  (Respondent's Exhibit 2 at 21) The victim's age and certain other identifying information is redacted in the excerpt of the victim's deposition filed in this case. (Respondent's Exhibit 2)

[6] In support of his petition Smith attaches excerpts of what appears to be several different police reports or investigation notes or interviews. (Doc. 1 at 42–57) Smith does not include cover pages or complete copies of any of these documents. Consequently, the Court cannot discern whether the attachments are what Smith purports them to be.

necessary.  Smith cannot meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Five**

Smith contends that his trial counsel rendered ineffective assistance by not investigating or presenting an expert witness to testify about the victim's mental health.  Smith claims that the victim's deposition revealed that the victim was seeing a psychiatrist and taking medication for bi-polar disorder as Smith had allegedly told counsel.  Smith argues that "counsel never contacted her doctor to find out how the victim's mental and emotional state may affect her ability to be truthful" and that counsel "never asked about the victim's medication for bipolar disorder and how that would affect her testimony."  (Doc. 1 at 36)  He further argues that on "[t]he day of trial, counsel made no challenge to the victim's competency and provided no type of mental health expert to testify about the victim's inability to separate truth from fantasy, whether the victim was susceptible to psychological transference, or manipulative coaching from an adult."  (*Id*. at 37–38) Smith alleges that "counsel's ineffectiveness denied [him] the chance to present evidence of any sort, including by proffer and cross-examination, regarding the victim's long history of mental illness" and that if counsel had "done what was asked of him by the defendant, [the] trial would have been much different."  (*Id*. at 39, 41)

31

The state post-conviction court rejected this ground in Smith's Rule 3.850

motion as follows (Respondent's Exhibit 12, Order Denying Defendant's Motion for

Postconviction Relief at 11–13) (court's record citations omitted):

> Defendant alleges that counsel was ineffective for failing to retain an expert witness regarding the victim's mental illness. Defendant claims that the outcome of the trial would have been different because the expert would have explained how the victim's mental illness affected her state of mind and established that the victim was not credible.
>
> Defense counsel is not necessarily ineffective for failing to consult an expert. *See Atkins v. Dugger*, 541 So. 2d 1165, 1166 (Fla. 1989) ("One tactic available to counsel is to present expert testimony. However, it is by no means the only tactic, nor is it required."). To successfully state a claim for postconviction relief, the defendant must explain how the expert witness's testimony would have created a reasonable probability of a different outcome under the specific facts and circumstances of the case. *See Braddy v. State*, 219 So. 3d 803, 823–24 (Fla. 2017). A witness's mental capacity may be attacked if the lack of capacity relates to the witness's capacity at the time of the occurrence of the facts about which the witness is testifying, or the witness's capacity at the time of trial. *See* § 90.608(4), Fla. Stat.; *Tullis v. State*, 556 So. 2d 1165, 1167 (Fla. 3d DCA 1990) (trial court properly excluded cross examination of witness's delusions, where delusions were not contemporaneous with the events in question or affecting the witness's ability to testify at the time of trial); *Clark v. State*, 379 So. 2d 97, 102 (Fla. 1979) (trial court properly sustained objection to questioning about whether State's witness had ever been treated by psychiatrist or psychologist because defendant did not show that an affirmative answer to the inquiry would in any way affect the truth or falsity of the witness's testimony). Evidence of a witness's deficient mental ability may be established by expert testimony and is admissible to impeach the witness if it suggests that the witness's emotional condition affects his or her ability to tell the truth. *See Hawkins v. State*, 326 So. 2d 229,231 (Fla. 2d DCA 1976); *see also Trainor v. State*, 768

So. 2d 1123, 1124 (Fla. 2d DCA 2000). An alleged victim may not be ordered to undergo a psychological evaluation unless there is "strong and compelling evidence" that denial of an examination could amount of a denial of due process. *State v. Coe*, 521 So. 2d 373, 374 (Fla. 2dDCA 1988) (quoting *Dinkins v. State*, 244 So. 2d 148, 150 (Fla. 4th DCA 1971)). The mere fact that a victim has a mental illness, however, is insufficient to compel a psychological evaluation. *See Simmons v. State*, 683 So. 2d 1101, 1105 (Fla. 1st DCA 1996); *State v. Camejo*, 641 So. 2d 109, 113 (Fla. 5th DCA 1994).

The victim mentioned in her deposition that she received treatment at some point for bipolar disorder and was taking medication. At trial, the State moved in limine to exclude any mention of the victim's mental health diagnosis as irrelevant and prejudicial. Defense counsel argued that it was relevant to her ability to testify truthfully. The Court indicated that such evidence would not be admitted unless its probative value outweighed the danger of unfair prejudice, but allowed Defendant to proffer the testimony. Defense counsel ultimately proffered some testimony about the victim's lack of cooperation with the pretrial proceedings, but did not proffer testimony regarding the victim's mental illness.[7]

The Court finds Defendant's claim speculative, conclusory, and insufficient to establish a claim for postconviction relief. To the extent he alleges that counsel should have hired an expert to examine the victim, he fails to establish that counsel had strong and compelling evidence sufficient to move for the victim to submit to such an examination. Establishing that the victim was undergoing treatment for bipolar disorder, in and of itself, would not have been sufficient to compel a psychological evaluation. To the extent Defendant claims that an expert could have established from existing medical records that the victim's bipolar disorder affected her ability either to accurately perceive the events at the time the offenses allegedly occurred or accurately relay them at the time of trial, his allegation is entirely speculative. Pure speculation cannot establish postconviction relief. *See Maharaj v. State*, 778 So. 2d 944, 951 (Fla. 2000). Defendant's claim is insufficient to

---

[7] *See* Respondent's Exhibit 4, trial transcript at 252–67.

establish that counsel was ineffective for failing to call an expert or that the outcome of the trial was prejudiced. This claim is therefore denied.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)[8] (citations omitted). *See also Sullivan v. Deloach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("Th[e] prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'") (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980)). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler*, 218 F.3d at 1314. Trial counsel must decide which strategic and tactical option to pursue. *See, e.g., Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099

---

[8] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

(11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it."); *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*) ("[W]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision."). A habeas petitioner must overcome the presumption that counsel's conduct was a matter of strategy. *Strickland,* 466 U.S. at 689. A defendant's disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel.

Smith's unsupported contention that counsel should have called an unnamed expert to testify, without more, is insufficient to warrant relief. *See, e.g., Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) ("To prevail on [a claim of ineffective assistance of counsel for failing to call a witness], the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted). "[M]ere speculation that missing witnesses

would have been helpful is insufficient to meet the petitioner's burden of proof."
*Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009).[9]

Smith fails to show that the outcome of his trial would have been different if trial counsel had called an unnamed expert witness to testify about the victim's mental health.  *See Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001) (holding that the petitioner did not establish ineffective assistance of counsel based on defense counsel's failure to call an expert witness because the petitioner failed to show that counsel's decision was so patently unreasonable that no competent attorney would have chosen that strategy), *cert. denied*, 535 U.S. 1000 (2002). Because Smith fails to show prejudice, his ground of ineffective assistance of counsel warrants no relief.  Smith cannot meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Smith's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The Clerk shall enter a judgment against Smith and **CLOSE** this case.

## DENIAL OF BOTH A
## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

[9] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2

**IT IS FURTHER ORDERED** that Smith is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."   To merit a certificate of appealability, Smith must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).   Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Smith is entitled to neither a certificate of appealability nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Smith must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida this 21st day of March, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record including unrepresented parties if any